Your Honor, my name is Richard Angino, and I represent the Tuckers. We're dealing here with a summary judgment motion that is granted as to malice, one of the prerequisites in terms of a malicious prosecution case. One of the things that I'd call to your attention at the outset, Your Honors, is if you would look at the district court's opinion. The footnotes reference aspects of the defense's motion for summary judgment. It almost seems to be the opposite of what the rule is. You're supposed to take the non-moving party's position. But here, all the sites that I see in the district court's opinion are referencing the summary judgment motion, like we didn't file a hundred and some page response and exhibits to that, no reference to that. But let me point out what I think is critical, is timing. Mrs. Tucker never met Suge Knight of Death Row, that had a contract with Interscope, until July of 1995, when Suge Knight was invited to come to the National Conference of Black Women's meeting in Seattle. She didn't meet with him, talk to him. The meeting takes place at this conference with a room full of people. So you basically have members of the National Conference meeting with Suge Knight to ask him to clean up his lyrics. We're talking gangster rap, and it's pretty timely right now in terms of what's happening. So except for what occurred at that meeting, in a group of people, Mrs. Tucker never again met with Suge Knight. Dionne Warwick set up a meeting with Suge Knight and some members of Time Warner for August, at which, no dispute, Mrs. Tucker was not there. So that Suge Knight doesn't even show up at this meeting in August. There's these telephone calls back and forth, and if there's any point of credibility in something, who do you believe in these telephone calls? Because Dionne Warwick has a room full of people who are listening to the phone calls, and we have Suge Knight on the other side saying what happens. What was the purpose of that meeting? The purpose of that meeting? The August meeting with Dionne Warwick. The side of Tucker is they're trying to get him to clean up lyrics. Can you put out gangster rap without hoes and bitches, NFs, MFs, all this kind of thing? And he says, yeah, I think I could do this. He said, but the money is coming in to do all that stuff. So at that meeting is Dionne Warwick. There is someone there from Time Warner to talk to, but he never shows up. There's no contract. There's nothing, but it seems like it's a put-up because the next day what happens is, I will not accept your contract for $75 million. I mean, you know, the thing here that, you know, you use the word circumstantial evidence. You use the word intent. This is what happens. July, August, now two lawsuits. These lawsuits came within like six or eight weeks of this meeting that they have, and these lawsuits talk about extortion, vehicle violation, business practices, just all the different areas. All this? Well, you allege interference with contractual relations. Pardon me? Interference with contractual relations. Right. There's that. And right off the bat, if any one of those allegations does not have foundation, we have a malicious prosecution action. So even if we were, and the issue here is not even that, you know, whether there was a basis. This is a malice. This is dismissed on a malice issue, and that's what really makes it kind of interesting, is that when you are dealing with malice, you are dealing with subjective intent, which is almost always proved by circumstantial evidence. You don't get people come around and say, I sued you because I hate you. I mean, people don't say those things. I read the district court's order and then looked at some of the California cases. You're right. The district court did say that there was, you know, the evidence that was presented was, from his perspective, was the matter of law was insufficient to establish malice. And what I understood him to be doing, if you look at California law, malicious prosecution, they really have made it tough on plaintiffs who seek to pursue malicious prosecution actions to meet their burden. And as I understand California law, and you can correct me if I'm wrong, the fact that the prior action may lack the probable cause or whatever the standard is for the prior action, isn't enough. So you have to have something more. Well, Your Honor, if you think about what the district, and I will correct you shortly, but if you think about the district court here, it goes claim by claim by claim. And even though I disagree with what the district court has said, because he's taken the facts as if you believe the defense in supporting the probable cause issue, his malice determination, which is the issue before you, is really like a page and a half. And let me summarize that for you very simply. He said Interscope and Death Row and their group amassed 48 banker boxes of material. We asked for 48 banker boxes of material. The position was it's all privileged. So the magistrate decides, okay, you say it's all privileged, so you don't have to give it to them. But you then can't use it either, and you can't use anything that would be in that. So what the judge does is something very interesting. You don't have that 48 boxes of material. You can't prove malice. If you read that page and a half, he's basically saying you don't have that 48 boxes of material. You can't prove malice. Let me point out, Your Honor, a submission that I sent, which was a recent case that came down last year from the Supreme Court of California. And that case is a soup cup case. And you would have it because I sent it, or if you don't, I can give you the site, whatever. What it says is to prevail on a malicious prosecution claim, they first go through the other prerequisites, but then they get to the malice. The malice element relates to the subjective intent or purpose with which a defendant acted in initiating the prior action. The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice, or the satisfaction in a civil action of some personal or financial basis. So if you show, or if a jury could find, that when they brought these two actions within six weeks after this meeting, after three years that Mrs. Tucker and the group were trying to eliminate Gangster Rap, was their purpose to get money from her? No. The purpose was to shut her up. And that would be the jury determination when they say it. It's not limited to actual hostility or ill will. It can be anything other than the legitimate purpose of bringing someone to justice or get compensation. We look at a burden of proof, and you just have a preponderance burden of proof in terms of malice. We also have the case of Padres where it says if you bring five causes of action, four of them have a basis, but one doesn't. It's appropriate for a malicious prosecution action. We go on and we say, how do you prove malice? Malice is usually proved by circumstantial evidence. Although a lack of probable cause, and that's where we get to, if they bring cases on RICO and cases on extortion and conspiracy, how can you have conspiracy when you're only bringing an action against Mrs. Tucker, whom she's conspiring with, does not support. So it can't clearly, but it can't do it by itself. But if they're bringing actions that indicate that they're bringing for reasons other than to get compensation, they admit that they dismissed it three years after it was brought because she doesn't have any money. So they spent hundreds of thousands of millions of dollars not to get some money from Mrs. Tucker. They also had an injunction claim. If they wanted to shut her up, wouldn't you get an injunction to basically tell her, stop trying to interfere with our business? They never sought to pursue the injunction for three years. This thing was ongoing for three years. They never came to court to seek to get an injunction. They left out the people that could give them some compensation. Originally, Time Warner, Atlantic Records, Fuchs, these were defendants. They leave out the people who potentially could provide some compensation if they were looking for compensation. So what we have here is lawsuits. We also have a situation, Your Honor, where when you look at my brief and you look in the deposition there, they referred to her as a charlatan. She's been out to destroy Interscope for three years. I mean, in effect, the lawyer himself representing Interscope is telling you, we're bringing this suit because for three years you've had this crusade to try to get rid of us. That certainly is not a purpose of compensation or anything like that. They took 11 days of depositions, 2,700 pages of depositions just of Mrs. Tucker. I mean, if you were basically saying we want to have you stop interfering with our business relationship, what's the 2,700 pages, 11 days of depositions for? I think of Mrs. Reagan. I can't remember, but was the underlying case filed in federal court? The underlying cases were filed in federal court. And what we did is we initially brought the Eastern District of Philadelphia, which is where we're all from. And they were transferred out here? It was all transferred out here. So we've been going on here now for almost 10 years because every time something's filed, it's years and years and we've been before you first on damages. Now you reversed on damages. Now we're back again on malice. And what I'd like to point out, Your Honor, is that if you look at the case that everybody turns to when they talk about malicious prosecution, it is the case of Sheldon Apple. You start off by always citing Sheldon Apple. Here's what Sheldon Apple, Supreme Court of California, says. The malice element of the malicious prosecution court relates to the subjective intent or purpose with which the defendant acted in initiating the prior action and past cases. So this is the Supreme Court of California saying past cases establish that the defendant's motives is a question of fact to be determined by a jury. This is the California Supreme Court citing its history. This is a jury issue because it's based on circumstantial evidence. So Tucker's position that in bringing the lawsuits, extortion, conspiracy, RICO, dropping the different people, they had an ad to have her killed. I mean, this is, Tupac Shakur called her an addressee. You don't maintain, though, that under the Sheldon Apple case that summary judgment could never be entered. I've never seen it. And, I mean, basically what I'm saying to you is that if there were, normally anything that requires oral testimony has to go to a jury because of the credibility. Is that what you're saying? Yes, that's my position that summary judgment can never be entered. I'm saying that it is very, very rare if. On the issue of malice. On malice. Just malice. Probable cause is a different. Cause, that is, a legal issue. See, probable cause is a legal issue. But malice, because it's subjective intent, you prove it by circumstantial evidence. And I don't know every case that's ever come down in California on malicious prosecution, but I've never seen a case granting summary judgment just as to a malice issue. You know, on the issue of malice alone, because if you think about it, if it is subjective intent, if credibility is for a jury, if there's a difference of opinion or difference of look of things, you could never grant it as a matter of law. Just so I have it in my mind, because your time is starting to run out, could you just cogently capsulize those circumstances which lead you to, would lead somebody in my position to conclude that there is a genuine tribal issue of fact with respect to, say, the lawyers on one hand, Inderscope on the other hand, and lastly, death row. Okay. I'm going to try to answer what you're saying if I understand exactly what you're saying. What I think of it is in little compartments. 1992, 1995, Tucker with Dionne Warwick, Melba Moore, this group is trying to basically go to Time Warner and places to get rid of gangster rap. So they're exercising a constitutional right. We then have a meeting in July of 1995 at which, again, they're trying to get someone to talk. Within this six-week period of time, we have Inderscope, the lawyers, death row, following what appears to be very similar complaints. So that if death row and Suge Knight and Inderscope, you know, are concerned about a relationship, and that's where I met Jim and Mrs. Reagan, just say no if you don't want us to interfere with your relationship. So the lawyers then would have framed those two complaints. They would have chosen among themselves the bases for those complaints. The district judge would have said that many of those bases have factual issues that have to go to the jury. So you don't throw it out then. All right. So lack of probable cause. Lack of probable. He says it's there. It's there. You have lack of probable cause. Basically, we've been up to you before, and so we have damages. The only thing left now is malice. My question, though, is what do you point to? What is the circumstantial evidence that you point to that gets you beyond probable cause that says, you know, there's a genuine factor over malice, there's a dispute here over malice? Well, you can't just rely. As I understand California law, you just can't rely on lack of probable cause. Circumstantial evidence. Okay. Now, what is the circumstantial evidence? They called her a charlatan. They said you've been trying to get us out of business for three years. You've gone to Time Warner. You took out stock in Time Warner. You went to a Board of Governors meeting at Time Warner. Time Warner divested itself of its 50% interest in Interscope. We now basically bring two slap suits against her. They dropped the things that I've been telling you. But nobody's ever determined that they were slap suits. Nobody's determined them, but she's doing something for three years. They start the suits. They accuse her of RICO. I mean, RICO, extortion. Well, you're probably, I think the district court is probably right. There may have been lack of probable cause for the RICO case. But you need to get, maybe I'm just reading California law. Maybe I need to go back and read California law. I think what you should do, and I'm never going to tell a judge what to do, but if you look at the cases on malice, see, you're coming away with, they say malicious prosecutions are an unfavored remedy. But they say we have them because people should not be able to sue you without probable cause. So although it's not a favorable cause of action, on the other hand, bringing suits against people without probable cause is not a favorable thing. So if you, the most important things are the things that I told you. Take a look at your complaints. Take a look at your causes of action. And think, the simplistic aspect, Your Honor, is the court says you have probable cause when you're bringing an action for a legitimate purpose. A legitimate purpose. Would you like to save your time? I'd like to save my time. All right. Thank you. Thank you. Good morning, Your Honor. My name is Steve Marinburg. I represent Interscope Records, the law firm of Paul Hastings, Janowski, and Walker, and their partners Charles Ortner and Jeff Thomas, who represented Interscope in one of the underlying litigations below, and Mr. David Kenner, who was the lawyer for Death Row Records below. This case has gone on for a long time. The dispute has been brewing for almost 12 years, and I'll be brief in my remarks here today. Could you speak just a little bit louder? Sure. As the case has gone on for 12 years, I won't add to it. I intend to be brief in my remarks here today. The focus of this appeal is on the district court's grant of summary judgment on the issue of malice, although I believe that there were other alternative grounds on which summary judgment could have and should have been granted in favor of defendants. But I want to speak to the malice ground today. Essentially, we've heard three arguments from the appellants as to why that was improper. First, there's an argument that seems to go along the lines that summary judgment, that the malice element is one that simply can't be decided on summary judgment, that somehow that there's some carve-out in that. I think he said it was rare. I think you ought to be fair. He said it's rare. Well, I think in the briefs. That's what he said here. Perhaps here he said it was rare. In the briefs, they do make it. Well, all right. Let's stick with that as the argument, then, for us. Fine. If we concede that summary judgment can be granted on the issue of malice, then this is truly one of those rare cases, because all we have here and all that plaintiffs are relying on is essentially the lack of probable cause, which, as you have pointed out and as California law specifically points out, is not enough after Sheldon Appell to sustain the plaintiff's burden of proving the required element of malice. Probable cause is now an objective element after Sheldon Appell, and malice is a subjective element. Now, your position is that we can have a look at the nature of the charges. Death Row brought wild criminal charges, very serious ones. Interscope did not. They had the same set of facts. Why did the ‑‑ what accounts for that difference? The difference is accounted for by the fact, and by the way, I wanted to point this out, the district court below does find probable cause for the RICO and extortion causes of action. Right. I'm saying why can't we look at ‑‑ well, first tell me why they bring different causes of action. The answer is because it's undisputed in the record that threats are made to Mr. Shug Knight that if you don't go along with what I'm asking you to do, I will go to the FBI and get them to start criminal prosecutions. That is disputed. You know, you've got a lot of testimony that's disputed. I wish you wouldn't tell us something. Your Honor, in all fairness, I think if you look at the evidentiary record, and I took this deposition, Mrs. Tucker does say she did go to the FBI. That is in the record. And that amounted to a RICO offense, extortion. That does constitute extortion, and the district court correctly so found. Well, we'll decide that. But that is ‑‑ So you say there was more threats to Death Row than there was to Interscope. Correct, Your Honor, and that's why Interscope doesn't bring that because no executive of Interscope is threatened with criminal prosecution, but an executive of Death Row is threatened, and that's why that can't be ‑‑ And they had criminals there in Death Row. He went to prison, didn't he? Your Honor, I am not here to ‑‑ He went to prison, didn't he? He certainly did. What was the offense? I'm not sure. I'm not representing Suge Knight or Death Row. You don't know what he went to prison for? I actually don't know what he went to prison for, but I do know he went to prison, and one of the reasons why Death Row collapsed and the contract ended by Interscope and thereafter we moved to dismiss the case was because he was in prison and the record company was no longer producing records. I read your description of the lyrics. You want to write for Reader's Digest or something. How would you describe those lyrics to us? I'm not going to stand here and say that I'm proud of or support gangster rap. That is not my personal opinion. On the other hand, I do support the fact that it is the right of Death Row Records and, frankly, the right of a substantial amount of the music-buying public to produce and purchase that type of music, and this case cannot turn on whether or not we approve of gangster rap. I don't necessarily approve of the lyrics in these songs, but I certainly have no problem defending the right of Death Row or Interscope to publish that music. When we start getting into whether these people should be granted summary judgment based on whether we like their music or not, I think we're getting into very dangerous stuff. Well, that's true, but let me ask you, why can't we consider circumstances in terms of the whole prosecution of the case that later circumstances shed light on the earlier circumstances, do they not? Well, first of all, let's look at the earlier circumstances. Mr. Angino has pointed out- Well, no, please answer my question. Don't give me your question. The answer is no, they don't. Why? Because there is not any evidence in the record of an improper question at a deposition. There's not any evidence in the record of an improper document request. We could consider- You're admitting we could consider them, though. Well, I believe that you can. Actually, I don't believe you can consider the way a case was litigated as evidence of malice. Well, why not? Why not? Because it is my job as an attorney to prosecute a case vigorously on behalf of my client. And therefore, I am entitled as an attorney to ask for plenary document requests. I am entitled as an attorney to ask for deposition questions- You're focusing on one element, but the general question, why can't you look at the later circumstances to determine malice in the complaint? Because I don't believe – well, one, because I don't believe if you're looking at the way a case is litigated, first of all, that says nothing about malice on behalf of the clients. Second, it says nothing on behalf of – about malice on behalf of the attorneys because the attorneys are under an obligation to vigorously litigate this case. And if there's something wrong being done, then the party on the other side can move the judge for a protective order, for example. Now, here we have the opposite. You've advanced the – you've advanced the explanation for dismissing the case. Well, it's all over. We don't need the injunction. That's what we're looking for. Why did you not seek an injunction right away? The answer is because the attorneys – and again, it's in the record. The attorneys made the decision to seek discovery from Mrs. Tucker before they brought a preliminary injunction motion, which is a common thing that attorneys do. I have done it myself. And they were frustrated because first, Mrs. Tucker wrongly failed to answer the complaint. There was a default judgment entered against her. And then when she finally answered the complaint, she then refused repeatedly to make discovery and, in fact, was sanctioned by the district court. Notably, the district court in this case that granted summary judgment was the same court that was supervising the underlying actions. And, again, I think it is very troubling. Isn't that Judge Takasugi? Judge Takasugi, correct, supervised the underlying actions and these malicious prosecution actions. Well, the only – I don't know about the underlying. But Judge Takasugi gave you very favorable rulings, which we had overrule. It goes back, and he's seeming to stick to his guns in giving you another favorable ruling. Well, he certainly did rule in our favor. In my opinion, Your Honor, there are actually grounds that he should have ruled for us. Let me give you one. For example, on voluntary – whether there's a favorable termination. He has actually ruled against the attorneys on that ground when I think there's clear case law, for example, Zevin v. Lee, that says the decision to voluntarily dismiss an action cannot be imputed to the attorneys, and yet that's a ground that he didn't rule for us. Likewise, probable cause. Let me look – turn first to the – turn to the Interscope defendants. He says there was no breach, and, therefore, there was no probable cause for these claims. But if you look at the complaint, and it's in the – it's the first item in the record. I think it's pages 2 through 16. The complaint filed by the – by Interscope's attorneys doesn't allege an actual breach. They file two claims saying that she's attempting to breach. Now, they do, in the heading of the case, lump together – of the first cause of action, lump together inducing breach of contract with interference with contract, with interference with economic relations. But if you look at the actual allegations in the first cause of action, they are not dependent on an actual breach. And if you look at the allegations of the third cause of action, again, they are saying she's attempting to induce a breach of fiduciary duty because she was at the time. Well, I'd like to get back to what was my essential question. Sure. Can you consider later circumstances? And you provided an answer as to why you didn't seek an injunction. What about the circumstances involving the vulgar epithet and the line through a name apparently indicating a death threat? Those were circulated. That's easy, Your Honor. That is – that ad – let's assume we want to accept. You have to. This is Tucker's characterization of that ad. I will assume that for a second. Okay. It is undisputed that Interscope had nothing to do with that ad. The attorneys had nothing to do with that ad. The attorneys for Death Row had nothing to do with that ad. But didn't Knight have something to do with it? Yes, but I don't represent Suge Knight. I don't represent Death Row. I am here on behalf of the attorneys for Death Row, Mr. Kenner. I'm here on behalf of the attorneys for Interscope, the law firm of Paul Hastings, Mr. Thomas, and Mr. Ortner. And I'm here on behalf of Interscope Records. And none of my clients had anything to do with that ad that was placed in Source magazine. What about Interscope circulating the record with the vulgar description of Mrs. Tucker? Well, again, there is nothing vulgar about Mrs. Tucker in that ad. She has misconstrued that. The music. She misconstrued the music. And, in fact, there was a case in Philadelphia where the Third Circuit ruled against her and found that she had actually never even listened to the music. You're saying the objectionable word was not used? What I'm saying is that it doesn't refer to her and it doesn't. But even if it did, that's not a ground for sustaining a malicious prosecution action. It may be a ground. No, of course it isn't. We're looking at the circumstances to see something about the mind of the clients. And I think there's a fair reference that a jury might make. All of this is in the area of what could a jury infer. It's not a summary judgment. It's what could be inferred from what's put in front of them. With all respect, Your Honor, I think the fact that an artist of death row writes a song, which let's assume that he was actually referring derogatorily to Mrs. Tucker, which is wrong, but let's assume that's the case, if that's the case. If an artist for death row writes a song and exercises his First Amendment rights to criticize her, that is not something that can be considered against death row's attorneys in a lawsuit that have nothing to do with this artist and not Interscope's attorneys in a lawsuit, not the law firm of Paul Hastings, or not Interscope. Interscope has a right to publish that music. Frankly, let me tell you, I think it's a matter of argument. But we're not going to rule one way or the other. It's just is it a matter of argument. And now I want to ask you about why you didn't terminate the case after Knight had been sentenced to prison. You know, there was nothing going on in that whole department. You let the case drag on, didn't you? Only for three months, Your Honor. And during those three months, when Knight goes to prison and the contract ends, the attorneys do at that point say, look, there's nothing. The primary relief we were seeking here was to stop the disruption of the contract. Since the contract's over now, that's our primary relief. It's gone. They asked the Tuckers if they would consent to a voluntary dismissal. The Tuckers refused. Therefore, it was litigated. And in those three months, it was litigated. I submit, Your Honor, that the assertion that they waited too long and delayed is just not borne out by the facts. And it's like a number of assertions that we get in this case. There are assertions. There are attorneys. Epstein dicks it. But there's no evidence in the record. And that, fundamentally, is that there's no circumstantial evidence in this case that can supply the more that is required beyond lack of probable cause, assuming those determinations were correct, that would sustain a reversal of the district court's grant of summary damages. Well, I just wanted to bring out, and I think you don't dispute in principle, that later circumstances may be relevant. And whether they are relevant, whether they can be proved, that would depend on the jury. Now, I'd like to turn to the complaint itself. These are astonishingly evil deeds charged for Mrs. Tucker. Do we have any parallel of that? It's not only the lack of probable cause. They're serious federal felonies. Do we have some case where California says that's not malice? Well, Mrs. Tucker, there is evidence. Let's talk, in the Interscope complaint, there is no criminal. That's right. It's the other one. Let's talk about death row. And that involves a lawyer. The lawyer drafted it. Pardon? David Kenner drafted it. David Kenner drafts that complaint. And he alleges the following criminal, he alleges a RICO claim with the following, with the predicate act being extortion. And wire fraud and mail fraud. But you're not answering my question. Is there a California case that says you can't prove to a jury that the wildness of the charges in the complaint show malice? Well. You're sort of saying. I'm struggling how to answer that. Well, go ahead and answer it. The answer is that there's no California case that says that. But in order to use those acts as evidence of malice, one would think at least at the outset that one would have to find an absence of probable cause. And it's been found on the RICO claim. No, there hasn't, Your Honor. In fact, summary judgment was granted against the appellants on the RICO claim and the extortion claim. The judge found that there was probably. Well, if we roll the other way, you know, the case would collapse. Is that right? No. Well, suppose we do find the other way. Then what? I don't believe that there's still any evidence that in light of the fact that it's undisputed that Suge Knight was threatened with criminal prosecution. No, I'm sorry. You're missing the point. There may be facts back and forth to be argued. But do you have a California case that says asserting wild federal felony charges is not evidence of malice? I don't have a case that says that. All right. Well, that's the point. That's the point. Frankly, there's no case either way on this. And I'll be candid with the Court. There's an absence of case law on summary judgment on the issue of malice. I think one of the reasons that is so is because obviously malice is a state law cause of action. Most malicious prosecution cases are brought in state court. And there is a peculiar provision in the California Code of Civil Procedure, Section 437C, that deals with the issue of when a dependent state of mind like would be at issue when malice is at issue. The court has discretion not to grant summary judgment. But there's no comparable carve out in Rule 56. As the proponent said, isn't the leading case, the only case that we're really bound by because we're not bound by courts of appeal, we're bound by the Supreme Court of California. And the leading case is Sheldon Apple that says malice is a question for the jury. Well, but malice is the fact that malice may be in certain circumstances a question for the jury. No. Their statement is it is a question for the jury. You've got to find the circumstances where it isn't. Well, but there are many cases, there are many issues that are questions for the jury. But that Federal law, that Rule 56 says, if the Anderson v. Liberty Lobby and Celotex say, yeah, it could be a jury issue, but if the defendant comes forward on summary judgment and puts you to the task of saying, where's your evidence that a jury could so fine in your favor, and you don't do that, issues that would normally be resolvable by a jury are resolvable on summary judgment, and that's exactly what happened here. Federal Rule 56, Anderson v. Liberty Lobby and Celotex, authorized, required that the appellants come forward with some evidence of malice, and they didn't do it. Well, you've said that several times. I do, and I still believe that. You said that the summary judgment order could be affirmed on other grounds. Yes. What were they? Well, as to the attorneys, I do not believe that you can, there are two grounds. One, I don't believe that you can impute the malice of the clients to the attorneys. There's case law, again, cited in our papers, that says just that. I believe the leading case is Rogers v. Paneto, right on point. Likewise, with respect to the favorable, no favorable termination, again, the facts that the client decides, that Interscope decides to dismiss this action because the contract is gone and there's no need to preserve it, that lack of favorable termination, assuming there really is a question of fact there, and I don't believe there is, given that it was a voluntary dismissal, but I'm not arguing that here. What I am suggesting is that the fact that it was dismissed by the client can't be attributable to the attorneys as a lack of favorable termination. I mean, attorneys, clients say dismiss the case, I want to dismiss the case all the time, and the fact that they do that shouldn't put the attorneys at risk of a malicious prosecution action. And that would be true of all the attorneys in this case. Mr. Kenner, Mr. Ortner, Mr. Thomas, and their law firm, Paul Hastings. And so I think summary judgment should have been granted on that ground alone. So there are two elements with respect to the attorneys. Malice of the client can't be imputed to them, and the fact that the client decided to dismiss the lawsuit can't be imputed to the attorneys for purposes of finding that there was no favorable termination. I'd like to ask you about one other thing that Mr. Kenner drafted that seemed to be, to me, and I'm just saying, when I say it seems to me, it seems to me it's something to be argued to a jury. It seemed to be a deliberate attempt to dirty the political organization of Mrs. Tucker. Because here is Mrs. Tucker being accused of all these crimes for personal financial, and then it's added she's doing it for the National Union of Black Women. Judge Noonan, Mrs. Tucker advocated against gangster rap lyrics for three years. Oh, I know that. Vigorously and effectively. It was only when she crossed the line. No, why is the National Political Congress of Black Women said to be her confederate? Because the threats were made. That's the assertion and the complaint. She's their agent. Well, and the threats are made at a meeting of the National Political Congress of Black Women. The letter, which is really an extraordinary letter, is drafted at Mrs. Tucker's direction on the letterhead of the National Political Congress of Black Women. There's so much dispute over those things. But the complaint seems to say she's practicing extortion and mail fraud and wire fraud. I can't imagine what the mail and wire fraud counts for. But anyway, it's all being done to raise money for the National Political Congress of Black Women? Well. That's pretty incredible. I do believe that Mrs. Tucker crosses the line when she says we want to replace Interscope because they want these lyrics with a black-owned distribution company. And she admits that that's what she wants to do. Well, you could argue that in a trial. Your Honor, let me make this point. In some respects, it's more important to grant summary judgment in these kinds of cases because if you get to trial, we're going to get all that stuff in there. The trial becomes a trial about gangster rap lyrics. And it cannot permissibly do that. I may sympathize with you. I may agree with you 100 percent about gangster rap lyrics. But I don't believe that the outcome of trials and whether there's been malicious prosecution should be determined with that smoke in the background. And that's why, in some respects, it was imperative that the district court exercise its responsibility and grant summary judgment in this case where it was required and deserved. I see my time is up. I have one piece of information I'm interested in. Death Row was in bankruptcy. Correct. That's my understanding. Right. But there was a relief from the automatic stay. Is that correct? That's my understanding as well. They're properly before us, but they never filed a brief. Nobody filed a brief on behalf of Death Row. I don't want to speak for Death Row on this because I don't. But if you're asking me what my understanding is as— I'm just curious. Does that exist? That's my understanding. I don't know whether they've been liquidated, whether they still exist and just failed to show up here. My understanding is that they're in bankruptcy, that they didn't file a brief, and that there's no one from Death Row here arguing today. Right. And there was no brief or anything filed. That's my understanding. Okay. Three quick points to respond to what you heard here, because the record that came out by Tupac Shakur in 1996, at the same time that this had started, it said, C. Delores, you're an MF-er. You are worse than Bill Clinton and Bob Dole, if that isn't directing something specifically at her. Second, timing. This has started in August, and he's right, right off the bat. They wanted all these depositions. They wanted all these things. Then they did nothing. I got into this case in late 1997, two years later. I said, this case has been going on for two years. It needs to get to trial. I want it to get to trial. You have my letter there where I've quoted that. And thirdly, these lawyers supposedly who are working hard for their clients, they're referring to C. Delores Tucker as her admitted efforts to put Interscope out of business while acting under the cloak of the First Amendment. She is a charlatan. This is a lawyer in a deposition saying why we're going to ask her all these questions. So that I think if you look at this case, there certainly is plenty of circumstantial evidence for a jury, not a judge, to decide. Thank you. We appreciate your arguments in this case. Both the Tucker cases are submitted at this time.
judges: Noonan, Paez, Tallman